IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, | ) CRIMINAL NO. 3:11-245-CMC |
| ) | |
| v. | ) **OPINION AND ORDER** |
| ) | |
| Elliott Jermaine Porcher, | ) |
| ) | |
| Defendant. | ) |
| _____ | ) |

Defendant filed a motion in this court pursuant to 28 U.S.C. § 2255, challenging his conviction for a violation of 18 U.S.C. § 924(c). ECF No. 541. The Government filed a response in opposition and a motion to dismiss or for summary judgment. ECF Nos. 573, 574. Defendant filed a response in opposition to summary judgment. ECF No. 577.[1]

**I.     Background**

On February 16, 2011, Defendant was charged in an Indictment with the following counts: 1) conspiracy to commit Hobbs Act Robbery; 2) Hobbs Act Robbery on April 6, 2010; 3) possession with intent to distribute a quantity of marijuana on April 6, 2010; 4) knowingly using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime and a crime of violence, and did cause said firearm to be discharged, on April 6, 2010; and 8) felon in possession. ECF No. 3.

---

[1] This matter was held in abeyance pending the *en banc* decision of the Fourth Circuit in *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019), and the decision of the Supreme Court in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).

On May 10, 2011, Defendant pled guilty, pursuant to a Plea Agreement, to Counts 1 and 4 of the Indictment: conspiracy to commit Hobbs Act Robbery and a violation of § 924(c). ECF No. 252. The Plea Agreement noted Count 4, the § 924(c) count, charged "using or possessing of a firearm in connection or furtherance of a drug trafficking offense and causing discharge of said firearm." *Id.* at ¶ 1. Judgment was entered on August 26, 2011. ECF No. 384. Defendant was sentenced to a total term of 235 months, consisting of 115 months as to Count 1 and 120 months as to Count 4, consecutive. *Id.* Defendant did not appeal. On November 5, 2014, an Amended Judgment was issued pursuant to Rule 35(b), reducing Defendant's sentence to 151 months: 31 months as to Count 1 and 120 months as to Count 4, consecutive. ECF No. 510.

**II.    18 U.S.C. § 924(c)**

Title 18 U.S.C. § 924(c) provides that a defendant shall be subject to a consecutive sentence if he or she, "during and in relation to any crime of violence or drug trafficking crime. . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm. . . ." 18 U.S.C. § 924(c)(1)(A).

A "drug trafficking crime" for purposes of § 924(c) means "any felony punishable under the Controlled Substances Act (21 U.S.C. §§ 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951 et seq.), or chapter 705 of title 46." § 924(c)(2). The statute defines a "crime of violence" as:

> an offense that is a felony and –
> (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.[2]

§ 924(c)(3).

The Fourth Circuit has held conspiracy to commit Hobbs Act Robbery cannot qualify as a crime of violence under the force clause of §924(c)(3)(A). *United States v. Simms*, 914 F.3d 229, 233-34 (4th Cir. 2019). The *Simms* court also concluded the residual clause of §924(c)(3)(B) is unconstitutionally vague and therefore void. *Id.* at 236.

On June 24, 2019, the Supreme Court also decided the residual clause of § 924(c)(3)(B) is void for vagueness. *United States v. Davis*, 139 S.Ct. 2319, 2336 (2019). In doing so, the Court rejected application of a case-specific approach for § 924(c) and applied the categorical approach.[3] *Id.* at 2327-2332.

**III. Discussion**

Defendant argues his § 924(c) conviction in Count 4 was predicated on the conspiracy to commit Hobbs Act Robbery conviction in Count 1, which cannot serve as an underlying offense as it is not a crime of violence as defined in § 924(c)(3)(A), the "force clause," and §924(c)(3)(B) is invalid. ECF No. 541. The Government has moved for summary judgment, arguing Defendant's claim is barred by his valid guilty plea and appeal waiver, is untimely, and fails on the merits as Defendant's § 924(c) charge was based on a drug trafficking crime as well as a crime

---

[2] § 924(c)(3)(A) is known as the "force clause" or "elements clause" (referred to herein as the force clause) and § 924(c)(3)(B) is known as the "residual clause."

[3] *Davis* did not address the force clause issue, as the Fourth Circuit did in *Simms*, because the lower court determined conspiracy to commit Hobbs Act Robbery did not qualify under the force clause, and this holding was not appealed. *Id.* at 2325.

3

of violence. ECF No. 573. Defendant responded, arguing his §924(c) cannot be based on the drug trafficking count in Count 3, because that count was dismissed. ECF No. 577. He also argues his appeal waiver should not be enforced, and the motion is timely. *Id.* at 2-4.

The court finds Defendant's § 924(c) conviction remains valid because it was predicated on a drug trafficking crime. Therefore, even though conspiracy to commit Hobbs Act Robbery no longer qualifies as a crime of violence under the now invalidated residual clause or under the force clause of § 924(c), the § 924(c) conviction stands as also based on an underlying offense that constitutes a drug trafficking crime.

*a. Analysis*

Defendant was charged with knowingly using or carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime **and** a crime of violence. ECF No. 3 at 3 ("That on or about April 6, 2010, in the District of South Carolina, the Defendants . . . as principals, aiders and abettors and as co-participants in jointly undertaken criminal activity, knowingly did use and carry a firearm during and in relation to, and did possess a firearm in furtherance of, a drug trafficking crime and a crime of violence, both of which are felonies prosecutable in a Court of the United States, and did cause said firearm to be discharged."). His Plea Agreement states Count 4 rests on a drug trafficking crime, though he did not plead guilty to a drug trafficking crime.[4] ECF No. 252 at ¶ 1 ("The Defendant agrees to plead guilty to Counts 1 of the Indictment now pending . . . and Count 4 of the Indictment now pending, which charges using or possessing of a firearm in connection or furtherance of a drug trafficking offense and

---

[4] As noted by the Government at the Rule 11 hearing, this was a scrivener's error – the Government intended to predicate the §924(c) charge on both a drug trafficking crime and a crime of violence, as pled in the Indictment. ECF No. 413 at 56.

causing discharge of said firearm. . ."). At his change of plea hearing, the court explained the charge in Count 4 as follows:

> Court: As far as Count Four, Count Four charges the firearms offense, and that charges that on or about April the 6th of 2010 here in South Carolina that you, as principals, aiders and abettors and co-participants in a jointly undertaken criminal activity knowingly did use and carry a firearm during and in relation to and did possess the firearm in furtherance of a drug trafficking crime and a crime of violence, both of which are felonies prosecutable in a Court of the United Sates, and that you did cause the firearm to be discharged.
> And this particular crime requires in order to be proved that you or someone that you aided or abetted actually committed a drug trafficking crime, that you or someone you aided and abetted knowingly used or carried a firearm in furtherance of a crime of violence or drug trafficking crime, and that you or someone you aided or abetted discharged the firearm.
> Mrs. Taylor, shouldn't that number one under that be committed to a drug trafficking crime or a crime of violence?
> Ms. Taylor: In this particular case, your honor, we have alleged that this was both during a crime of violence and a drug trafficking crime, and I guess that's why Mr. Richardson drafted it the way that he did.
> Court: Okay. All right. . . . Mr. Porcher and Mr. Jenkins, do you understand the two charges, what the Government would have to prove, and the penalties that you would face if you plead guilty to Counts One and Four? Mr. Porcher?
> Defendant: Yes, ma'am.

ECF No. 413[5] at 34-36.

> The Government summarized the evidence against Defendant:
>
> Mr. Howard Logan, the defendant, arranged to purchase marijuana from a source of supply, a co-defendant Mr. Lashawn Gillard, on April 6th of 2010. Mr. Logan and Mr. Gillard agreed to meet in Santee, South Carolina. At the same time, your honor, Mr. Logan also arranged with his co-defendants Mr. William Jenkins and Mr. Porcher for Jenkins and Porcher to rob Logan's source of supply during the arranged drug transaction.
> Court: To rob Gillard?
> Ms. Taylor: To rob Gillard of the drugs.
> Court: All right.

---

[5] The transcript of the Rule 11 hearing was filed in a co-defendant's case – Mr. William Jenkins. The transcript is No. 413 on Jenkins' ECF docket, and in the docket of the case containing all co-defendants.

5

Ms. Taylor: Jenkins and Porcher – excuse me – in turn arranged for the co-defendants Mr. Tony Murphy, Mr. Randell Murphy, Mr. Marvin Dennis and Mr. Bradshaw to assist with the robbery. Your honor, on that date Mr. Gillard was robbed at gunpoint and a firearm was discharged by the robbers. Logan along with his brother who is not here today, your honor, Mr. Lake Vaughn, left the scene of the drug robbery with the marijuana.

After the other defendants made attempts with Mr. Logan and Mr. Vaughn to arrange an equitable distribution of the marijuana, those attempts failed and ultimately Mr. Jenkins, Mr. Porcher, Mr. Tony Murphy, Mr. Randell Murphy, Mr. Marvin Dennis and Mr. Brandon Bradshaw went to the Holiday Inn Express in search of Mr. Logan and Mr. Vaughn. When Mr. Logan and his brother Vaughn parked in the lot at the Holiday Inn Express, Jenkins, Porcher, and the others approached the vehicle and a gunfight ensued in which a variety of firearms were discharged. One of those shots struck and killed Mr. Vaughn.

Mr. Jenkins, Mr. Porcher, Tony Murphy, Randell Murphy, Mr. Dennis and Mr. Brandon Bradshaw all fled through the Outback parking lot, which is a business that was adjacent to the Holiday Inn. When officers arrived at the crime scene, they found that Mr. Logan was there and had been shot. They found that Mr. Vaughn had been killed. They found a variety of firearms and spent ammunition and approximately 39 pounds of marijuana. Mr. Porcher, Tony Murphy, and Randell Murphy all gave post-Miranda statements implicating themselves and the others charged in this case.

…

Mr. Richardson: With respect to Mr. Jenkins, based on statements from witnesses at the scene, Mr. Jenkins fired, discharged a firearm and Mr. Porcher discharged a firearm.

…

Court: Okay. All right. So in order to prove Count Four, which every – all five of you are charged with, then the Government would have to prove that you or someone you aided and abetted committed a drug trafficking crime. Now, this came up while you were out, Mr. Richardson. Your elements had said drug trafficking crime under number one on – for example, on the Randell Murphy plea agreement page one, then you say in number two that it was in relation to or in furtherance of a crime of violence or a drug trafficking crime, and so I asked Mrs. Taylor about that. She said you were proving up both in this case. Is that right?

Mr. Richardson: That is correct, your honor. That's – that's simply my mistake.

Court: Okay. All right. So the drug trafficking crime here is the – is the attempted robbery or the robbery by Logan.

Mr. Richardson: The drug trafficking crime is – to separate the two out, the drug trafficking crime, your honor, is the possession with the intent to distribute the 39 pounds.

Court: Okay.

Mr. Richardson: The crime of violence is the Hobbs Act Robbery that took place in Santee continuing through the attempted distribution of the 39 pounds or so of

6

marijuana that was found in the blue Volkswagen in the Holliday Inn Express parking lot.

Court: Okay. So who do you allege committed the drug trafficking crime?

Mr. Richardson: We allege – well, with the exception of Mr. – excuse me – Ms. Jenkins and Ms. Milton, they all participated in a joint endeavor to possess with intent to distribute 39 pounds of marijuana. They assisted each other. Now, if you want to know who again the principal aider and abettor distinction, the principal here who actually possessed it would be Mr. Logan who possessed it away from Santee. He was assisted in obtaining it from Lashawn Gillard, his source of supply, by Mr. Jenkins, Porcher, the Murphy brothers, Bradshaw, and Dennis.

Court: They ripped him off.

Mr. Richardson: Correct, your honor.

Court: Okay. All right. And so then the use and carry of a firearm during and in relation to the drug trafficking crime was because there were firearms used and discharged during the rip-off of the drugs.

Mr. Richardson: Both – in both instances, your honor. There were firearms both used and discharged in Santee during the rip-off of the drugs and there were firearms used and discharged during the attempted distribution of the spoils of the robbery in Sumter, South Carolina.

Court: What is your understanding of what Logan had told them in order to entice them to help him steal the drugs? What were they supposed to get out of this?

Mr. Richardson: It is my understanding that they were told they would receive an equitable 50 percent. So, Mr. Jenkins and Mr. Porcher would receive 50 percent and Mr. Logan and his brother would receive 50 percent. The other individuals, Mr. Dennis, Bradshaw and the two Murphy brothers, Mr. Logan was unaware of those individuals. He did not know that they were participating. Mr. Jenkins and Mr. Porcher in a sense subcontracted out assistance with the robbery unbenounced [*sic*] to Mr. Logan. So those four individuals did not have an agreement with Mr. Logan.

…

Court: On your Hobbs Act armed robbery you indicate that had the conspiracy been carried out, interstate commerce would have actually or potentially been delayed, obstructed, or affected in some way. What is the evidence on that?

Mr. Richardson: The evidence, your honor, is the Fourth Circuit has repeatedly held is that narcotics themselves affect interstate commerce. . . . I'd also add just as a – really a side note given the clear Fourth Circuit law on that, that Mr. Gillard had come from Atlanta to the Santee area . . .

Court: Okay. That answers the question if it came from Atlanta.

*Id.* at 52-53; 55-58, 62-63. The court then inquired of Defendant:

Okay. Now, you have heard the prosecutors explain their theory of what happened in the case and in doing that say what your role was in the case. Do you agree, Mr. Porcher, with what they say you did?

Defendant: Yes, ma'am.

7

> Court: Do you have any questions about anything concerning the case?
> Defendant: No, ma'am
> Court: All right. Then how do you wish to plead to Counts One and Four of the Indictment, not guilty or guilty?
> Defendant: Guilty

*Id.* at 63.

It is clear from the facts recited and from Defendant's admissions that the conduct underlying the possession and discharge of the firearms, on the same day (April 6, 2010), was a conspiracy to commit Hobbs Act Robbery, an actual Hobbs Act Robbery of marijuana which the co-defendants, as principals, aiders and abettors, then possessed with intent to distribute. After the robbery, Defendant would, according to prior negotiations between co-defendants, possess multiple pounds of marijuana with the intent to distribute. *Id.* at 56-58; *see United States v. Fisher*, 912 F.2d 728, 730 (4th Cir. 1990) ("Intent to distribute may be inferred from . . . a quantity of drugs larger than needed for personal use."); *see also U.S. v. Young*, 609 F.3d 348, 355 (4th Cir. 2010) ("The evidence presented at trial established that Young was in possession of almost five kilograms of cocaine, a quantity that clearly was large enough to permit the jury to conclude that the drugs were intended for distribution.").

The drug trafficking crime in the Indictment was cited by the Government in its factual recitation, along with the conspiracy to commit Hobbs Act Robbery and substantive Hobbs Act Robbery, as underlying offenses for the § 924(c) charge in Count 4. ECF No. 413 at 56-58. While Defendant did not plead guilty to a drug trafficking count or the substantive Hobbs Act Robbery, it was not necessary that Defendant be convicted of a particular crime in order for his § 924(c) conviction to rest on it. Section 924(c)(1)(A) notes, in part, the drug trafficking crime or crime of violence must be one "for which the person **may be** prosecuted in a court of the United States." *See also United States v. Crump*, 120 F.3d 462, 466 (4th Cir. 1997) ("In accordance with the views

of all the circuits considering the question, we hold that a defendant's conviction under §924(c)(1) does not depend on his being convicted – either previously or contemporaneously – of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable doubt."). In this case, Defendant was prosecuted for both a crime of violence and a drug trafficking crime, and the Indictment and Rule 11 hearing transcript show this. The facts and colloquy with Defendant at the change of plea hearing made it clear that the §924(c) charge was predicated on both bases, as quoted above.

Therefore, even though conspiracy to commit Hobbs Act Robbery can no longer serve as an underlying offense for Defendant's § 924(c) conviction after *Simms* and *Davis*, his §924(c) conviction was not based solely on conspiracy to commit Hobbs Act Robbery, but also on the Hobbs Act Robbery and the drug trafficking crime committed the same day as the firearm possession. *See United States v. Hare*, 820 F.3d 93, 105-06 (4th Cir. 2016) (upholding § 924(c) conviction where the conviction was based on both a drug trafficking crime and a crime of violence).[6]

### IV. Conclusion

Defendant's challenge to his conviction under § 924(c) fails, even though conspiracy to commit Hobbs Act Robbery can no longer serve as an underlying offense, because the § 924(c) conviction remains predicated on a drug trafficking crime and a crime of violence. The

---

[6] The Government has also argued that Defendant's § 2255 motion should be dismissed as untimely and/or based on the appeal waiver. However, the court need not reach these arguments, as it has determined that Defendant's conviction for § 924(c) stands.

Government's motion for summary judgment (ECF No. 574) is granted and Defendant's § 2255 motion (ECF No. 541) is hereby **dismissed with prejudice**.

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie  
CAMERON MCGOWAN CURRIE  
Senior United States District Judge

Columbia, South Carolina  
August 26, 2019